UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>　　　　Plaintiff<br><br>v<br><br>HARSIMRAN DHALIWAL<br>　　　　Defendant | <u>Case No. 23-CR-125-RP</u> |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF FIRST AMENDED MOTION
FOR DETENTION OF DEFENDANT**

Defendant Harsimran Dhaliwal ("Defendant") is a non-citizen of the United States charged with inducing individuals to make false statements in the process of multiple firearms purchases. *See* 18 U.S.C. § 922(a)(6). The Government further alleges that Defendant transported as many as 70 firearms across international borders into Canada, where they were sold or distributed to persons engaged in criminal activity, including members of Canadian gangs. The Government seeks pretrial detention under 18 U.S.C. § 3142 and would show that the § 3142(g) factors establish that Defendant is both a flight risk and a danger to the community. Additionally, the Government submits the following evidence:

1. Defendant is a Canadian citizen who, up until his detention, resided in Edmonton, Alberta, Canada with his wife and parents.

2. Defendant maintained a tourist visa to enter the United States and, prior to his arrest at the Austin airport on September 22, 2023, traveled to the United States on at least three occasions—January 5, 2022, February 26, 2022, and June 10, 2022.

3. In January 2022, Defendant met an individual at a hotel bar in Austin and entered into an agreement with the individual (hereinafter, "Trafficker") in which Trafficker would purchase compact-sized pistols in calibers of .380 or larger for Defendant.[1] Defendant agreed to pay Trafficker a flat rate of $800 for each firearm; Trafficker would profit whatever remained after purchasing the firearm. Each firearm could be sold on the Canadian black market for as much as 10x the cost in the United States.

4. Defendant also advised Trafficker to employ other individuals to purchase firearms for Defendant. Accordingly, Trafficker employed three other straw purchasers[2] ("SP1," "SP2," and "SP3") to purchase firearms from dealers.

5. SP1 purchased several firearms for Trafficker. Trafficker drove SP1 to several dealers in the Austin area and paid SP1 $100 for each firearm purchased. A search of ATF's E-trace system revealed that SP1 purchased six handguns from firearm dealers in the Austin area on March 11, 2022, April 12, 2022, and April 25, 2022. One of these firearms was later recovered after a search warrant was executed at a house in Canada.[3] The time from when the handgun was purchased by SP1 to when it was recovered during the search, or "Time to Crime," was 237 days.

6. SP2 purchased three pistols for Trafficker, in exchange for a small amount of marijuana. Records confirmed that SP2 purchased three firearms from dealers in Buda, Texas on March 8, 2022.

---

[1] Compact-sized pistols are considered prohibited weapons in Canada.
[2] Black's Law Dictionary defines a "straw purchase" as "someone's buying of a firearm for another who is prohibited to make such a purchase because of a prior conviction, an order of protection, or some similar judicially imposed proscription." (11th ed. 2019). In common use, a straw purchase is understood as the purchase of a firearm for another who, for whatever reason, is prohibited from obtaining one.
[3] The search also uncovered approximately three kilograms of cocaine, and numerous other types of illegal substances, including Xanax, oxycodone, cannabis gummies, and psilocybin.

7. One of the guns purchased by SP2 was recovered in November 2022 from an individual who was arrested on an outstanding arrest warrant. Time to Crime was 245 days.

8. SP3 purchased four pistols for Trafficker. Records confirmed that two handguns were purchased from a dealer in Austin on March 17, 2022, and two on April 11, 2022.

9. During each purchase, the straw purchaser made a material misrepresentation by responding "YES" to the question, "Are you the actual transferee/buyer of the firearm(s) listed on this form . . . ?" Trafficker and SP1 have stated they knew that Defendant was the actual buyer of firearms.

10. To facilitate the crime, Defendant communicated with Trafficker using Snapchat and a secured messaging application known as Wickr.

11. On two separate occasions, Trafficker transferred approximately 70 firearms to Defendant. All firearms purchased by SP1, SP2, and SP3 were transferred to Defendant's possession and traveled in interstate or foreign commerce.

12. Records from Zelle show a $2,000 payment from Defendant to Trafficker on April 11, 2022.

13. According to information provided by Canadian law enforcement, Defendant was recently the subject of an anonymous Crime Stoppers tip that identified Defendant as a drug trafficker with access to firearms.

14. Canadian law enforcement also has indicated that Defendant has an extensive social connection to two high-level organized crime groups that operate in western Canada with suspected operations extending into the United States and areas of central and south America. Defendant is documented as having school, neighborhood, or community

connections to individuals operating in both the Brother's Keepers gang[4] and the United Nations gang[5] networks. These two organized crime groups have been the subject of ongoing rivalries resulting in targeted murders, attempted murder, shootings, extortion, and intimidation. However, Defendant has never been documented as being targeted or accused of any of these acts of violence associated with these groups.

A. *Defendant is a serious flight risk because not only does he lack community ties to Austin, his familial and financial ties are almost exclusively in Canada.*

Defendant has no family or community ties in Austin. Rather, Defendant is a Canadian citizen with parents and a wife who reside in Canada, as well as a daughter in Canada whom he supports financially. Pretrial Services Report at p. 2. Defendant does not maintain dual citizenship, nor does he maintain lawful permanent resident status in the U.S. Defendant also travels internationally extensively, as evidenced by his travel to Greece, Austria, and the Czech Republic in 2023 and Mexico in 2022. *Id*.

What ties Defendant does have to Austin are criminal in nature. Defendant entered the U.S. under the pretext of tourism, and he attempted to obtain a Texas driver's license and apartment in Austin to facilitate his smuggling of firearms into Canada. These criminally "suspect" ties cannot overcome the evidence that Defendant is a flight risk. *See, e.g.*, *United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992) (finding that community ties that were criminal in nature failed to overcome evidence that defendants were flight risks).

Not only does Defendant lack legitimate ties to the community here, but his ties to

---

[4] Per Wikipedia, the Brothers Keepers gang is an Indo-Canadian crime group "that is active mainly in Metro Vancouver but is believed to have made inroads [] all across British Columbia, Alberta, Manitoba and Ontario and the American state so Washington, Oregon, Minnesota and Montana." https://en.wikipedia.org/wiki/Indo-Canadian_organized_crime.
[5] Per Wikipedia, the United Nations gang "is a criminal gang that originated in the Vancouver, British Columbia area." https://en.wikipedia.org/wiki/United_Nations_(gang).

Canada—in particular, to organized crime groups there—are sufficiently strong to indicate that he is a serious flight risk. Because the guns obtained by the Defendant through straw purchasers are prohibited in Canada, they can be sold on the street for well above the retail price paid in the U.S. Defendant is documented as having connections to individuals operating in at least two of these gangs—the Brother's Keepers and the United Nations—that operate in Western Canada. Thus, the very circumstances of the offense—that Defendant's financial resources are in Canada—increase the likelihood of his escape there.

Defendant maintains that if released on bond, he will live with his sister in Sylvania, Ohio. Pretrial Services Report at p. 2. But, given Ohio's proximity to Canada, such an arrangement would be inadequate for ensuring the appearance of the Defendant in Austin. Sylvania, Ohio is a mere 70 miles from Ontario, Canada, via Detroit, and is only about 20 miles from Lake Erie, which maintains a direct passageway to Canada. Moreover, considering the history and characteristics of Defendant, there is reason to be doubtful that Defendant will appear in Austin as required. For one, Defendant's travel history shows him to be a flight risk. In 2023 alone, before his detention, Defendant had traveled to Greece, Austria, and Czech Republic, in addition to his three reported visits to the United States. Pretrial Services Report at p. 2. And, records of Defendant's criminal history indicate that Defendant has breached his court-ordered conditions of release before. This fact, coupled with his extensive travel history and would-be closeness to Canada if released, weigh in favor of finding that "no conditions of release will ensure the appearance of the Defendant."

   B. *Defendant's release would pose a danger to the community because he is likely to continue engaging in criminal activity.*

Defendant has a history of dangerous behavior suggesting that his release would pose a danger to the community. He faced criminal charges as a juvenile and entered into adult criminal

behavior in 2011 after being arrested and charged with trafficking marijuana. He has since been charged with possession of weapons, assault with weapons, and breaching court-ordered conditions of release. This criminal history, including breaching his conditions of release, is strong evidence of Defendant's propensity to violate the law. This offense alone is evidence that Defendant is willing to disregard the laws of two countries, the U.S. and Canada. Moreover, Defendant was recently the subject of an anonymous CrimeStoppers tip in Canada identifying him as a drug trafficker with access to firearms.

    The particular circumstances of this crime and Defendant's role in it provide further support that Defendant's release would pose a danger to the community. While inducing an agent to provide false statements does not immediately sound of a violent crime, the offense here is in furtherance of violent crime. Defendant trafficked 70 firearms into Canada—the purchases of thirteen of those form the basis of this charge. Because only two of the weapons obtained through Defendant's straw purchasers has been recovered, it is likely that the other weapons are already in the hands of gangs. Defendant is servicing high-level organized crime groups, which operate in Western Canada and have suspected operations extending into the United States and areas in Central and South America, with firearms. Two of these organized crime groups are the subjects of ongoing rivalries resulting in murders, attempted murders, shootings, extortion, and intimation. While Defendant has never been documented as being accused of or the target of these acts of violence, his provision of firearms to these gangs enables the members to carry out acts of violence.

    Finally, if Defendant is not detained, he is likely to continue his smuggling operations. The Fifth Circuit has previously held that the risk of continued narcotics trafficking on bail constitutes a risk to the community. *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989). So,

too, does the risk of continued firearms trafficking. Certainly here, the relative ease with which Defendant could smuggle firearms from Ohio to Canada increases the risk that Defendant will continue this conduct. Moreover, if Defendant were to be released, there is no assurance that Defendant would be prevented from communicating with his agents. The fact that Defendant has operated out of Canada and traveled to the U.S. only on occasion is evidence that Defendant is capable of directing his agents remotely. Defendant could maintain his suppliers in Austin or find new suppliers, given that Defendant has proven to be adept at recruiting agents below him.

For the foregoing reasons, the Government requests that the Defendant be detained without bond.

Respectfully submitted,

JAIME ESPARZA
UNITED STATES ATTORNEY

By:   */s/ Keith M. Henneke*
KEITH M. HENNEKE
Assistant United States Attorney
Texas Bar No. 24054497
903 San Jacinto Blvd., Suite 334
Austin, Texas 78701
Office  (512) 916-5858
Fax     (512) 916 5854
keith.henneke@usdoj.gov